[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 450-CC
I
On June 9, 1995, Clarence Schiller, then Land Use Inspector for the Town of Prospect and a named defendant, issued to Domenic Neri, the plaintiff, a cease and desist order concerning activities related to a sand and gravel business at his residence, 17A Terry Road, Prospect, Connecticut. (Return of Record [ROR], Exhibit D-2, June 9, 1995 Cease and Desist Order). Neri's home is situated in an RA1 residential zone (RA1). (ROR, Exhibit B-1, Zoning Permit Application, March 3, 1989; Exhibit B-2, Building Permit # 1949). Specifically, Schiller ordered Neri to stop: 1) storing or garaging any commercial vehicle exceeding three tons carrying capacity; 2) washing, repairing or performing work on the vehicles; 3) operating a business at the site. (ROR, Exhibit D-2).
On August 4, 1995, Schiller, now acting as Prospect's Zoning Enforcement Officer ("ZEO"), re-issued his June cease and desist order. (ROR, Exhibit D-3, August 4, 1995 Cease and Desist Order). Thereafter, Neri appealed to the Prospect Zoning Board of Appeals ("ZBA"). (ROR, Exhibit A, Appeal to ZBA). On September 26, 1995, after a public hearing, the ZBA voted unanimously to uphold CT Page 450-DD Schiller's order. (ROR, Exhibit E-2(2), September 26, 1995 ZBA Minutes).[1] On October 23, 1995, pursuant to General Statutes § 8-8, Neri filed this appeal to the court.
 II
Neri claims that the ZBA's decision was arbitrary, capricious and an abuse of discretion because: 1) the ZBA failed to state a reason for its decision, and 2) the ZBA failed to review the actions of both the Prospect Planning and Zoning Commission ("PZC") and Schiller in the issuance of the August 4, 1995 cease and desist order. (Appeal, Count One, ¶ 21). Neri next contends that ZBA's decision was arbitrary, capricious and an abuse of its discretion because upon its review of the actions of the PZC, the ZBA failed to find: 1) that the PZC deprived Neri of a legal right to use his property as permitted by the PZC and various other local land use authorities in 1988 and 1989; 2) the PZC by its decision effectively revoked permits previously granted Neri in 1988 and 1989; 3) the PZC ignored the weight of the evidence which favored Neri; and 4) the PZC illegally and unreasonably determined that its past mistakes in issuing a zoning permit to Neri had to be remedied "by divesting [Neri] . . . of a property right which he has enjoyed and on which he has relied for over six years." (Appeal, Count Two, ¶ 21).
Neri does not contest the ZBA's affirmance of Schiller's CT Page 450-EE order forbidding him to wash, repair or perform work on his vehicles or to operate his sand and gravel business at the property. Neri's appeal is limited to the legal validity of the ZBA's affirmance of the ZEO's order to cease using his garage to store a commercial vehicle exceeding three tons carrying capacity.[2]
 III
General Statutes § 8-8 (b) provides that "any person aggrieved by any decision of a board may take an appeal to the superior court. . . ." "[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal." Jolly, Inc. v. Zoning Board ofAppeals, 237 Conn. 184, 192 (1996). "Aggrievement is established if there is a possibility, as distinguished from certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) ConnecticutResources Recovery Authority v. Planning Zoning Commission,225 Conn. 731, 739 n. 12 (1993). An owner of property that is the subject of a board decision is aggrieved and entitled to bring an appeal. Winchester Woods Associates v. Planning ZoningCommission, 219 Conn. 303, 308 (1991).
The evidence presented at the September 10, 1996 trial CT Page 450-FF reveals that Neri acquired title to the property in 1991 from his sister by quitclaim deed dated June 28, 1991. (Transcript, p. 9; Plaintiff's Ex. 1). Thus, at the time Schiller issued the cease and desist order now complained of, Neri was the owner of the affected property. The court finds, therefore, that for purposes of this appeal, Neri has properly proven aggrievement.
 IV
Although the ZBA decision appealed to this court was issued in 1995, the recorded history of this matter began seven years earlier, in 1988. On March 2, 1988, Neri attended a meeting of the PZC and inquired about "permission to construct a 40['] x 40' garage for storage of a large truck and several cars." (ROR, Exhibit E-1(1), March 2, 1988 PZC Minutes). The minutes of that meeting reflect that Neri was informed that it was unnecessary for him to come to the PZC, but that "he must go to Inland Wetlands because of a pond on his property, and bring a plot plan." (ROR, Exhibit E-1(1)).
In September of 1988, Neri obtained a wetlands certification from the Inland Wetlands Enforcement Officer to construct a "40' x 50' barn." (ROR, Exhibit C-1, Review and Certification of Chesprocott Health District and Inland Wetlands Enforcement Officer). On March 3, 1989, Neri received an approval from the CT Page 450-GG Chesprocott Health District. (ROR, Exhibit C-1). On that same date, Neri applied for a zoning permit for a 50' x 50' building. (ROR, Exhibit B-1). The application indicated the proposed building's purpose was for "storage." (ROR, Exhibit B-1). On March 9, 1989, Eugene McCarthy, acting zoning enforcement officer, issued a zoning permit in accordance with Neri's application. (ROR, Exhibit C-2, Zoning Permit # 3038; Exhibit B-1). Thereafter, on March 14, 1989, Neri applied for and obtained a building permit for a "large garage for equipment storage." (ROR, Exhibit B-2). The record does not disclose when Neri completed construction of the building in question.[3]
In late 1993, John Scortino, one of Neri's neighbors, complained to Schiller, then the town's Land Use Inspector, about certain activities being conducted on Neri's property. (ROR, Exhibit G-1, May 16, 1995 Colella letter). — Scortino owns adjacent property and shares with Neri a common driveway. (ROR, Exhibit G-1). — Scortino informed Schiller that Neri was running his sand and gravel business out of his residence; that there was a great deal of commercial traffic coming in and out of the property; and, that Neri was powerwashing his trucks on his property. (ROR, Exhibit G-1). On November 30, 1993, Schiller, after investigation, issued Neri a cease and desist order regarding his activities at 17A Terry Road. (ROR, Exhibit D-1, November 30, 1993 Cease and Desist Order). Schiller's order CT Page 450-HH directed Neri to stop performing maintenance of his trucks on the property and to remove a payloader from the property. (ROR, Exhibit D-1). Additionally, written on the copy of Schiller's November 30, 1993 order contained in the record is the following endorsement: "1-3-94 has been ok ever since." (ROR, Exhibit D-1).
In 1995, Peter DiLeo, Prospect's PZC chairman, received a letter from attorney John Colella, counsel for the Scortinos. (ROR, Exhibit G-1). Colella, in his letter, complained that Neri had resumed operating his sand and gravel business out of his residence, and this business involved, according to Colella, employees working out of Neri's garage, with dumptrucks, payloaders and flatbeds in and out of the driveway "seven days a week at all hours of the day and night." (ROR, Exhibit G-1). This letter also indicated that many of these commercial vehicles "exceeded three tons." (ROR, Exhibit G-1, p. 2). At its June 9, 1995 meeting, after hearing the complaints of Neri's neighbors, the PZC voted unanimously to issue to Neri a second cease and desist order. (ROR, Exhibit E-1(2), June 9, 1995 PZC Minutes). Schiller issued this second order, directing Neri to stop: (1) storing or garaging any commercial vehicle exceeding 3 tons carrying capacity; (2) washing, repairing or performing work on the vehicles; and (3) operating a business at the site. (ROR, Exhibit D-2). At the request of Neri, the PZC continued this matter to June 21, 1995, and then to July 5, 1995. (ROR, Exhibit CT Page 450-II E-1(2); Exhibit E-1(3), June 21, 1995 PZC Minutes). The minutes of the June 21, 1995 PZC meeting indicate that "Chm. Dileo granted the request [to continue the matter] as Mr. Neri has agreed to move his vehicles from 17A Terry Road." (ROR, Exhibit E-1(3)). On July 5, 1995, after hearing argument, the PZC voted3-2 to keep the cease and desist order in effect until further notice. (ROR, Exhibit E-1(4), July 5, 1995 PZC Minutes).
Chairman DiLeo subsequently sent letters to Gerry Gleason, Eugene McCarthy, and William Scarpati, in an effort to determine what transpired before the PZC in 1988. (ROR, Exhibit G-6, July 10, 1995 DiLeo letter).[4] Gleason was the PZC's chairman in 1988 when Neri appeared before that body. (ROR, Exhibit G-6). In 1989, McCarthy, as the town's zoning enforcement officer, issued the zoning permit and Scarpati, as the town's building inspector, issued the building permit. (ROR, Exhibit G-6).
McCarthy responded by letter dated July 12, 1995, and wrote that Neri appeared before the PZC on March 2, 1988, "to discuss building a detached garage on his property to store a truck and some cars. The truck was used in his trucking business and because of lack of work during the winter months and the high cost of renting space, [Neri] decided to build his own place to store the vehicle and some cars." (ROR, Exhibit G-7, July 12, 1995 McCarthy letter). Scarpati, in his letter of response, also dated July 12, 1995, wrote that "[a] building permit, #1949, CT Page 450-JJ issued by me for a `large garage' measuring 50' x 55' on March 14, 1989 is valid as issued under its intended use." (ROR, Exhibit G-8, July 12, 1995 Scarpati letter). Scarpati further wrote that "[o]n the remarks side of the application it reads `Large garage for equipment storage'. This constitutes the nature of the structure only, not the use of the property." (Emphasis in original.)(ROR, Exhibit G-8).
The PZC received Gleason's comments at its July 19, 1995 meeting. The minutes of that meeting indicate that Gleason "remembers Mr. Neri getting permission to park his truck inside the building. Truck was to go out at 7:00 am and return at 5:00 pm." (ROR Sup., Exhibit A-1, July 19, 1995 PZC Minutes).[5] A written summary of that same July 19, 1995 meeting indicates that Gleason reported that Neri obtained permission in March of 1988 to store "trucks", one of which was a "large dump truck" with "18 wheels." (ROR, Exhibit H-1, Summary of July 5, 1995 and July 19, 1995 PZC Sessions, p. 6). Chairman DiLeo then noted that the PZC in March of 1989 "was in error in allowing Mr. Neri to construct a garage for a `Large Truck and Several Cars' as the regulation did not allow commercial vehicles exceeding 3 ton carrying capacity in a residential zone." (ROR Sup., Exhibit A-1). The minutes also indicate that PZC commissioner Graveline found no fault with the building itself, but that the truck was a problem. (ROR Sup., Exhibit A-1). After discussion, the PZC voted CT Page 450-KK unanimously to leave the cease and desist order in effect. (ROR Sup., Exhibit A-1).
On August 2, 1995, the PZC voted to re-issue the cease and desist order[6] and confirmed Schiller's appointment as Zoning Enforcement Officer ("ZEO") for the Town of Prospect. (ROR, Exhibit E-1(5); ROR Sup., Exhibit A-2). On August 4, 1995, Schiller, now acting as Prospect's ZEO, re-issued his June cease and desist order. (ROR, Exhibit D-3, August 4, 1995 Cease and Desist Order).
On August 4, 1995, Neri filed an appeal to the ZBA for relief from the ZEO's order. (ROR, Exhibit A). The matter was fully heard on September 26, 1995, and Neri, the PZC and Schiller were all represented by counsel. (ROR, Exhibit F-1). Arguments were presented by counsel for Neri, the PZC, Schiller, and the Scortinos. The ZBA also received the testimony of Neri, Schiller and several neighbors. After closing the public portion of the hearing, the ZBA voted unanimously to uphold Schiller's cease and desist order. (ROR, Exhibit E-2(2), September 26, 1995 ZBA Minutes). However, the ZBA furnished no reasons for its decision. This appeal followed.
 V
A zoning board of appeals conducts a de novo hearing on an CT Page 450-LL appeal from an action of a zoning enforcement officer. Caserta v.Zoning Board of Appeals, 226 Conn. 80, 88-89 (1993). Such a board "is endowed with a liberal discretion, and its [actions are] subject to review by the courts only to determine whether [they were] unreasonable, arbitrary or illegal." Francini v. ZoningBoard of Appeals, 228 Conn. 785, 791 (1994). "Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing[.]" (Internal quotation marks omitted.) Bloom v. ZoningBoard of Appeals, 233 Conn. 198, 206 (1995). "The burden of proof to demonstrate that the board acted improperly is upon the plaintiff." Id.
"Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons." Bloom v. Zoning Board of Appeals,
supra, 233 Conn. 206. The court "review [s] the record to determine whether there is factual support for the board's decision, not for the contentions of the applicant." (Internal quotation marks omitted. ) Francini v. Zoning Board of Appeals,
supra, 228 Conn. 791. "The court's function is to determine on the basis of the record whether substantial evidence has been presented to the board to support its findings. . . . Evidence is sufficient to sustain an agency finding if it affords a CT Page 450-MM substantial basis of fact from which the fact in issue can be reasonably inferred." (Citations omitted; internal quotation marks omitted.) Jaser v. Zoning Board of Appeals,43 Conn. App. 545, 548 (1996).
Even where, as here, there is conflicting evidence before the zoning board of appeals, the court cannot substitute its judgment for that of the board. See Westport v. Norwalk, 167 Conn. 151,161 (1974); Horvath v. Zoning Board of Appeals, 163 Conn. 609
(1972). "The administrative appeal is simply a review of whether the agency could have decided as it did, not a `transfer of jurisdiction' to the court for its determination of a `better' decision." T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 592.
 VI
General Statutes § 8-7 states, in relevant part, that "[w]henever a zoning board of appeals . . . sustains or reverses wholly or partly any order, requirement or decision appealed from, it shall state upon its records the reasons for its decision. . . ." Although § 8-7 facially directs that a board state its reasons for its decisions, our case law has held that this statutory requirement, although desirable, is not mandatory. See Hovanesian v. Zoning Board of Appeals, 162 Conn. 43, 47
CT Page 450-NN (1971); Ward v. Zoning Board of Appeals, 153 Conn. 141, 144
(1965). "[W]here the board sets forth the reasons for its actions, the reviewing court is bound by those findings and may examine only those assigned grounds to determine whether they are reasonably supported by the administrative record or are clearly erroneous." Caserta v. Zoning Board of Appeals,28 Conn. App. 256, 260 (1992), affirmed in part; modified on other grounds,226 Conn. 80 (1993). Where, however, "there is a failure to comply with the obligation to state reasons, the action is not deemed void but the court must search the record to see whether the board was justified in its decision." West Hartford InterfaithCoalition, Inc. v. Town Council, 228 Conn. 498, 515 (1994). The ZBA's failure to state its reasons for denial is not per se arbitrary, illegal or an abuse of discretion. Therefore, Neri's appeal cannot be sustained on that ground.
Neri also claims that the ZBA failed to find properly that the actions of the PZC deprived him of his vested right to use his garage to store a commercial vehicle with a carrying capacity exceeding three tons. It is undisputed that the Prospect Zoning Regulations permit storage of a commercial vehicle only between 1 1/2 and 3 tons carrying capacity, and only as an accessory use in a RA1 residential zone. (ROR, Exhibit L, § 300, p. 19). Although the PZC may grant special permits for those activities requiring special permit approval (ROR, Exhibit L, § 540, pp. 65-66), the regulations contain no provision allowing the PZC to CT Page 450-OO issue a special permit for the residential storage of a commercial vehicle exceeding three tons carrying capacity. (ROR, Exhibit L, § 540, p. 65). Moreover, the regulations provide that "[u]nless [the use is] specifically permitted [in the regulations], the use shall be deemed to be prohibited throughout the Town." (ROR, Exhibit L, § 300, p. 14). Approval for storage of such a vehicle could therefore only be obtained from the ZBA as a variance to the zoning regulations. (ROR, Exhibit L, § 600.2, p. 71). Neri contends, however, that based on the actions of the PZC and the subsequent issuance of the zoning permit, he has acquired a vested right to use his garage to store his truck.[7]
"A vested right is the right to initiate or continue the establishment of a use or construction of a structure which, when completed, will be contrary to the restrictions or regulations of a recently enacted zoning ordinance." 4 C. Rathkopf, The Law of Zoning Planning (4th Ed. Rev. 1994) § 50.02[1]. Our review of the record reveals that the ZBA by its September 1995 decision affirming the ZEO's cease and desist order necessarily concluded that Neri failed to prove that he acquired a vested property right to store or garage, in violation of the Town's zoning regulations, a truck with a carrying capacity exceeding three tons. This court concludes that the board's decision is reasonable and supported by substantial evidence. CT Page 450-PP
The minutes from the March 2, 1988 PZC meeting reflect that Neri inquired about "permission to construct a 40['] x 40' garage for storage of a large truck and several cars." (ROR, Exhibit E-1 (1)). The court finds that this representation by Neri as to use is at best, ambiguous. Further, the record for this appeal reveals that the PZC took no formal action concerning any use of Neri's proposed facility beyond what was permitted by the zoning regulations.[8]
The record discloses that Neri offered no evidence regarding his intention to utilize his proposed garage to store a truck with a carrying capacity exceeding three tons. Neri's application for a zoning permit indicated the building's use was for "storage", with no mention of the character of the vehicle Neri intended to garage. The building permit was issued for a "large garage for equipment storage." The ZBA heard argument from the PZC and Schiller indicating that they never granted Neri the right to build a garage for a use now known to be in violation of local regulations. The record reveals that at all relevant times, the zoning regulations prohibited in residential districts, the storage of commercial vehicles with carrying capacities exceeding three tons. Accordingly, based on the record for this appeal, the ZBA could conclude that neither the actions of the PZC nor McCarthy conferred upon Neri any vested right to store in his CT Page 450-QQ garage a truck in excess of what was permitted by the zoning ordinance. The court concludes, therefore, that the decision of the ZBA in denying Neri's appeal is not arbitrary, illegal or an abuse of discretion. This court will not disturb the ZBA's decision. Jaser v. Zoning Board of Appeals, supra,43 Conn. App. 548.
Neri next claims that the ZBA failed to find properly that the actions of the PZC effectively revoked the permits previously granted him. Based on the record, however, Neri's reliance is misplaced.
The ZBA, prior to its decision on Neri's appeal, had, in this court's opinion, a record from which it could determine that Neri never received any formal decision from the PZC or any enforceable grant of legal authority from any Prospect governmental official in effect to vary the zoning ordinance and thus permit Neri to use his garage to store any truck beyond what was permitted by the ordinance. As stated previously, in reviewing that determination on appeal, the function of the court is not to reach its own conclusion upon the subordinate facts, but only to determine whether the conclusion of the board on those facts was unreasonable, arbitrary or illegal. Francini v.Zoning Board of Appeals, supra, 228 Conn. 791. Based on the record, the court concludes that the ZBA's decision is reasonable CT Page 450-RR and supported by substantial evidence. Accordingly, the court will not disturb that decision. Jaser v. Zoning Board of Appeals,
supra, 43 Conn. App. 548.
Neri also complains that the ZBA acted illegally and arbitrarily in failing to consider fully the procedural history of this matter before the PZC and the actions of the ZEO. The court concludes that these claims are without merit.
Appellate review of the actions of a zoning enforcement officer is vested in the zoning board of appeals pursuant to General Statutes § 8-7. See R. Fuller, 9 Connecticut Practice, Land Use Law and Practice, § 8.6, p. 142. Article VI, § 600.1 of the Zoning Regulations of the Town of Prospect provides that the ZBA shall have the power to "hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by the Zoning Enforcement Office [sic] or decisions of the Planning and Zoning Commission in the enforcement of these Regulations." (ROR, Exhibit L, p. 71).
"There is a presumption that administrative boards of this character have acted `fairly with proper motives and upon valid reasons, and not arbitrarily'" Levine v. Zoning Board of Appeals,124 Conn. 53, 57 (1938), quoting St. Patrick's Church Corp. v.CT Page 450-SSDaniels, 113 Conn. 132, 139 (1931); see also Murach v. Planning Zoning Commission, 196 Conn. 192, 205 (1985). "Proceedings before an administrative board are informal. . . . Such a board is not bound by the strict rules of evidence. . . . It may act upon facts which are known to it even though they are not produced at the hearing." (Citations omitted; internal quotation marks omitted.) Connetta v. Zoning Board of Appeals, 42 Conn. App. 133,138-39 (1996). "The only requirement is that the conduct of the hearing shall not violate the fundamentals of natural justice. That is, there must be due notice of the hearing, and at the hearing no one may be deprived of the right to produce relevant evidence or to cross-examine witnesses produced by his adversary or to be fairly apprised of the facts upon which the board is asked to act." Id., 139.
This record indicates the ZBA was fully informed about the proceedings before the PZC and that the ZBA, acting within the parameters of its statutory authority, fully considered the actions taken by the PZC and the ZEO. Additionally, the record reveals that during the proceedings before the ZBA, Neri was represented by counsel, was afforded a full and fair opportunity to present his case, and was aware of the facts relied on by the ZBA in its decision making. See Caserta v. Zoning Board ofAppeals, supra, 226 Conn. 90.
The court concludes that Neri, in this appeal, has failed in CT Page 450-TT his proof. Therefore, the appeal is dismissed and an order may enter accordingly.
William Patrick Murray a judge of the Superior Court