ESTHER M. LESSNER *v.* ZONING BOARD OF APPEALS OF THE TOWN OF MANCHESTER ET AL.

KING, C. J., MURPHY, SHEA, ALCORN and COMLEY, Js.

166

Argued October 10—decided October 29, 1963

*Lewis Segal,* for the appellant (plaintiff).

*Philip Bayer,* with whom were *Herbert A. Phelon, Jr.,* and, on the brief, *Richard W. Law,* for the appellee (defendant Burnham Estates, Inc.) ; with him also was *Irving L. Aronson,* town counsel, for the appellee (defendant board).

MURPHY, J.   The defendant zoning board of appeals of Manchester granted a variance to the defendant Burnham Estates, Inc., on March 28, 1962, authorizing it to construct a one-family house on a

lot having a 100-foot frontage on Robert Road in Manchester. The property is in a residence AA zone. The zoning regulations specify a 120-foot frontage for AA zone lots. Manchester Zoning Regs., art. 3 (1956). The plaintiff owns property adjoining the Burnham lot. She appealed the granting of the variance to the Court of Common Pleas, which dismissed her appeal. From the judgment, the plaintiff has taken this appeal.

The plaintiff's property and that of Burnham are part of the layout of Green Hill Terrace, for which a map was recorded in 1925. The lots on the north side of Robert Road were mapped as being eighty feet wide at the street line. The plaintiff acquired lot 26 and one-half of the adjoining lot, No. 25, and built her house upon them. In 1961, Burnham purchased the other half of lot 25 and sixty feet of lot 24, next to it. Twenty feet of lot 24 had been sold to another. Burnham applied for a permit for a one-family house, and on May 10, 1961, the building inspector issued the permit. Burnham proceeded with construction of the house and had the foundation completed when on May 31, 1961, the building inspector, as a result of a complaint made on behalf of the plaintiff, ordered construction stopped. On March 1, 1962, Burnham applied for a variance, which the board granted after a public hearing.

At the hearing, it was disclosed that the building inspector had issued the building permit in accordance with a 1951 written opinion of the town counsel and had ordered construction stopped following the opinion of a different town counsel in 1961. Both opinions concerned the interpretation and application of article 3 of the Manchester zoning regulations, which excepted from the provisions governing the minimum size of lots any lots of

smaller size which were of record on August 1, 1945. The 1961 opinion, as applied to Robert Road, permitted the erection of a dwelling on an eighty-foot lot if it was one of the lots delineated on the 1925 map but did not allow a dwelling to be erected on property less than 120 feet wide unless it included a full size lot as laid out on the map.

Burnham had been approached by a real estate agent who tried to interest it in purchasing 120 feet on Robert Road. The property consisted of lot 24 plus forty feet of lot 25. The price was too high for a speculative builder. Later, the agent offered 100 feet at a price suitable to Burnham. The agent had interested the owner of the property to the west of lot 24 in buying twenty feet of lot 24. The agent had been assured by the planning and zoning office and by the building inspector that a permit could be issued and a dwelling constructed on the 100-foot frontage and so informed Burnham's representative. This advice accorded with the practice followed since the 1951 opinion of the town counsel and was based upon it. After construction was stopped, Burnham was unsuccessful in attempting to purchase the west twenty feet of lot 24 or to sell its property to either of the adjoining owners.

The board, in granting the variance, made a very thorough and detailed finding of the reasons on which its action was predicated. Briefly summarized, they were: No contiguous land is available to provide a 120-foot frontage. Burnham's land cannot be used for any permitted purpose without a variance. A variance would not impair the integrity of the zoning regulations or be substantially detrimental to the public welfare. A substantial majority of the lots of record in the subdivision have frontages of less than 100 feet. There are

still three 80-foot lots in the subdivision on which dwellings can be legally built. The side-yard areas of Burnham's property are greater than required. The property has 25 percent more frontage than nearby subdivision lots and meets density objections. The proposed house will be in a price range comparable to those in the area. The board concluded that the location of the property and the unavailability of additional land for compliance with the regulations constituted special circumstances which did not apply generally to other property in the neighborhood; that the approval of the variance conformed with the comprehensive plan of the zoning regulations and would promote the health, safety, economic and general welfare of the town; and that unusual difficulty or unreasonable hardship would result to Burnham from the strict application of the regulations. The board voted unanimously in favor of the variance.

The plaintiff maintains that the board acted illegally, arbitrarily and in abuse of its discretion in granting the variance and claims, in support of this argument, that Burnham's predicament was caused by its own conduct in rejecting the opportunity to purchase the entire 120-foot tract and its subsequent reliance on the assurance by the zoning and building departments that a dwelling could be built legally upon the 100-foot frontage then offered to it. These contentions were advanced before, and they were considered by both the board and the trial court. Hindsight might indicate that Burnham should have made further investigation before purchase. However, it is not controverted that the town authorities gave their advice on the basis of a legal opinion of the town counsel which apparently had not been questioned during the ten years

that the zoning authorities and the building department had followed it.

Zoning was not adopted in Manchester until 1938. The regulations have been twice revised, in 1945 and 1950, and have also been amended. Zoning boards of appeal have the power to vary the application of zoning bylaws, ordinances or regulations in harmony with their general purpose and intent, where a literal enforcement would result in an exceptional difficulty or unusual hardship, so that substantial justice may be done. General Statutes § 8-6; Manchester Zoning Regs., art. 5, § 4 (1956). The essential purpose of a board of appeals is to deal with individual cases in which property rights are involved. It furnishes elasticity in the application of the regulatory measures so that they do not operate in an arbitrary or confiscatory, and consequently unconstitutional, manner. *Florentine* v. *Darien,* 142 Conn. 415, 425, 115 A.2d 328. Without some latitude in its operation, the machinery of government can become oppressive. For that reason, a zoning board of appeals is created to vary, within prescribed limits and consonant with the exercise of a legal discretion, the strict letter of the zoning regulations in the case of a claim which has real merit and can be granted consistently with the spirit and purposes of the general plan. *St. Patrick's Church Corporation* v. *Daniels,* 113 Conn. 132, 139, 154 A. 343. Thus, a board of appeals can keep the law running on an even keel. Ibid. The situation presented to the board here was one in which the application of the regulations to Burnham's property practically destroys its value because Burnham cannot obtain additional frontage to meet the 120-foot requirement. The application of the regulations to Burnham, when considered in

the light of the past history of the subdivision and the fact that it is still possible to build on eighty-foot lots if they were mapped of record prior to 1945, bears such little relationship to the purposes of zoning that as to this property the regulations are in effect confiscatory or arbitrary. *Libby* v. *Board of Zoning Appeals,* 143 Conn. 46, 51, 118 A.2d 894. The board has found that the hardship is peculiar to this particular property and oppressive as to it. See *Cymerys* v. *Zoning Board of Appeals,* 151 Conn. 49, 51, 193 A.2d 521.

The plaintiff places great reliance on *Misuk* v. *Zoning Board of Appeals,* 138 Conn. 477, 86 A.2d 180, and *Wil-Nor Corporation* v. *Zoning Board of Appeals,* 146 Conn. 27, 147 A.2d 197. We agree with the trial court that both cases are distinguishable from this one. In *Misuk,* not only had the property owners constructed a substantial portion of their building in violation of the zoning regulations when the matter was brought to the attention of the building inspector and construction halted but they had not even obtained a building permit before starting the work. In *Wil-Nor,* the owner of the property had erected its commercial building under a Wilton building permit so that a corner of it projected over the town line into a residence zone in Norwalk. No attempt had been made beforehand to determine the location of the town boundary or to obtain permission to build in Norwalk.

Upon the record, the court was not in error in concluding that the plaintiff failed to prove that the action of the board was illegal, arbitrary or in abuse of its discretion.

There is no error.

In this opinion the other judges concurred.