[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Salvatore N. Feola, appeals from a decision of the Zoning Board of Appeals (Board) of the Town of Newtown (Town), denying the plaintiff's applications for several zoning permits for properties located off Great Quarter Road in an area of Newtown near Zoar Lake known as Housatonic Heights.[1] Among the many lots owned by the plaintiff in Housatonic Heights, five lots numbered 4, 9, 13, 15 and 16 (collectively, the "lots") are the subject of this appeal.[2]
On July 6, 1995, the plaintiff applied for zoning permits to CT Page 5890 construct single-family dwellings on the lots. In a letter dated October 18, 1995, the Town's zoning enforcement officer, William E. Nicholson, informed the plaintiff that his applications for zoning permits had been denied. The zoning enforcement officer explained, "I have been advised by the Town Attorney and by the Chairman of the Planning and Zoning Commission to withhold all zoning permits for new homes on this property until the work specified in the Road Work Agreement agreed to by you and the Town . . . has been completed."
On November 15, 1995, pursuant to General Statutes § 8-6, the plaintiff appealed the zoning enforcement officer's decision to the Board. In his appeal, the plaintiff claimed that the zoning enforcement officer's denials of the plaintiff's applications for zoning permits were improper because, inter alia: (1) the lots are legal nonconforming building lots for which no current zoning violations exist; (2) the plaintiff has complied with the agreement referenced by the zoning enforcement officer, and the agreement is illegal and void; and (3) the zoning enforcement officer's decision was illegal, arbitrary and capricious. On February 7, 1996, the Board held a public hearing on plaintiff's appeal. In a decision published in the Newtown Bee
on April 12, 1996, the Board upheld the zoning enforcement officer's decision denying the plaintiff's application for zoning permits for the lots. In a written decision dated April 9, 1996, the Board stated four reasons for its decision:
 1. Applicant has not provided either a legal description or an adequate map of the lots which are the subject of the application.
 2. The applicant has not conformed to the requirements of an agreement between the Town and the applicant dated March 29, 1994.
 3. None of the proposed lots meet the requirements of Section 8.02.100 since there is no access permitting unlimited access for the lot owners and for all public utilities.
 4. The proposed lots do not meet the requirements of Section 8.02 since none of the proposed lots meet the area or minimum square requirements of the zone and all of the proposed lots adjoin other land owned by the applicant or have since October 2, 1967, adjoined other land owned by the applicant. CT Page 5891
On April 26, 1996, the plaintiff commenced this appeal to the Superior Court. The plaintiff claims that in denying the plaintiff's applications for zoning permits, the Board acted illegally, arbitrarily and in abuse of the discretion vested in it by law in that, inter alia, the Board: (1) "failed to approve an application which conforms to the [Town's zoning] regulations, in that the Plaintiff has met any and all of the zoning regulations established by the Town . . . for the property which is the subject of this appeal; [(2)] . . . failed to assign a proper reason for denial of the application in that the [Town] zoning regulations . . . require that a zoning permit be issued where the property conforms to all regulations;" (3) based its decision to deny the applications "on factors not contained" in the Town zoning regulations; and (4) "improperly interpreted § 8.02.100 of the Town . . . zoning regulations. . . ."
A. Aggrievement
The plaintiff is an aggrieved party under General Statutes § 8-8 (a)(1) and (b). The plaintiff alleged and proved that he owns the lots in question, which lots were involved in and were the subjects of the Board's decision.
B. Timeliness
Plaintiff's appeal is timely under the requirements of General Statutes § 8-8 as the plaintiff commenced this appeal by proper service of process upon the proper parties within fifteen days from the date the Board's decision was published, in accordance with General Statutes § 8-8 (b), (e) and (f).
"The standard of review on appeal from a zoning board's decision . . . is well established." Bloom v. Zoning Board ofAppeals, 233 Conn. 198, 205, 658 A.2d 559 (1995). The trial court must determine whether the Board's action was "arbitrary, illegal or an abuse of discretion." Id., 205-06. "Courts are not to substitute their judgment for that of the board. . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons. . . . The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Citations omitted; internal quotation marks omitted.) Id., 206.
"Where a zoning agency has stated its reasons for its CT Page 5892 actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. . . . The [decision] must be sustained if even one of the stated reasons is sufficient to support it." (Internal quotation marks omitted.)Bloom v. Zoning Board of Appeals, supra, 233 Conn. 208.
General Statutes § 8-3 (f) provides that before any land or structure may be used for any permitted use, there must be "certification in writing by the official charged with the enforcement of [the municipal zoning] regulations that such building, use or structure is in conformity with such regulations or is a valid nonconforming use under such regulations." See alsoLanger v. Planning Zoning Commission, 163 Conn. 453, 456, A.2d (1972). If an application for a zoning permit "conforms to the standards set forth in the regulations, the enforcement officer has no discretion and must issue the certificate. It is clearly a ministerial function. . . ." Id.
Section 8.02.100 of the Regulations of the Town of Newtown provides in pertinent part: "A lot in any zone existing as of August 25, 1958, having sole access to a street by means of an easement, right of way or strip of land at least 12 feet widethat will permit unlimited access for the owners of such lot andfor all public utilities may be used and the permitted buildings may be erected, altered or enlarged only if subsequent to August 25, 1958 the lot has not been owned (or controlled[)] by a person (or persons) owning (or controlling) contiguous land or lots having frontage on a street or private street. . . ." (Emphasis added.) In its third written reason for denying the plaintiff's applications for zoning permits, the Board stated: "[n]one of the proposed lots meet the requirements of Section 8.02.100 since [there] is no access permitting unlimited access for the lot owners and for all public utilities." The plaintiff argues that there was no evidence in the record to support the Board's conclusion of no unlimited access and that the Board erroneously interpreted the meaning of the term "unlimited access" as used in § 8.02.100.
During the public hearing, the Board considered letters written by the Town's fire chief, Bill Halstead, and the zoning enforcement officer and heard testimony from the zoning enforcement officer and neighbors of the lots in question on the issue of access. In a letter to the zoning enforcement officer CT Page 5893 dated July 13, 1995, the fire chief stated the following: "[p]er your request we have checked the road off Great Quarter Rd. . . . where it is proposed to build several more homes . . . for accessibility of fire apparatus and other emergency vehicles. The vehicle we used was our Engine 441 which has the best turning radius of any fire apparatus in town. We traversed the entire length of the road and offer the following: 1) the road is very narrow, only one vehicle can [pass] at a time on the first section, 2) at the top of the first grade there is a very sharp right hand turn which we were just able to maneuver [sic], a larger piece of apparatus such as our tanker would have to climb the curb in order to make the turn, 3) as you continue up the road it widens to about 20' but the grade becomes very steep (possibly in excess of the town standards), 4) [p]er the residents the town highway department does not provide winter maintenance to this section of road. Due to the present condition of the road and no winter maintenance it will be very difficult, depending on the weather to get fire apparatus to the last two existing homes on this road." The fire chief concluded: "[i]n order for the fire department to provide proper fire protection to the present residents and to any future residents this section of road needs to be rebuilt. We strongly recommend that before any more building lots are approved the road be widened, the sharp turn reduced and the Town Engineer check the grade to see it meets the town's road standards, also the Highway department should provide some winter maintenance for emergency vehicle access."
In a letter dated July 13, 1995, to the Town attorney, David L. Grogins, the zoning enforcement officer stated his reasons for denying the permits, one of which was that based on the fire chief's assessment, the zoning enforcement officer concluded that public utilities cannot access the lots. The plaintiff, however, argued at the Board hearing that the fact that the fire chief traversed the entire roadway implies that, while it may have been difficult, he was able to access the lots provided the Town clears the roadway of snow and ice. In response to this argument, the zoning enforcement officer testified that the fire chief "said that he did it with a vehicle that has the best steering radius and they couldn't get one of the larger trucks up there . . . so I would say that you don't have unlimited access . . ."
In addition to the observations and conclusions of the fire chief and the zoning enforcement officer, the Board also heard CT Page 5894 testimony from several neighbors of the proposed building lots. Ray Schmidt, resident of 61 Great Quarter Road, testified that he has lived at that location for ten years and that there is no drainage on the roadway, that in the winter the roadway freezes when water crosses over it, that there is a 90 degree blind turn that cannot be negotiated in dry weather, that two cars cannot pass each other in that area, and that there is a hill that is so steep that even with winter maintenance, "we still can't make it up that hill." Schmidt also remarked as to the danger faced by his children in walking on the roadway. Dan Fogliano, resident of 67 Great Quarter Road, testified as to the lack of drainage on the roadway and presented photographs depicting the water flowing over the roadway and ice covering the surface of the road. He stated that one winter a Town plow slid down the hill onto his property, and he described the road as "a hazard."
The evidence substantially supports the Board's conclusion that the rights of way leading to the subject lots did not permit unlimited access for the lot owners and for all public utilities. Not only did the Town's fire chief determine that the lots were not reasonably accessible by fire apparatus and emergency vehicles, but neighbors testified to the difficulty and dangers they face in accessing their own property. This evidence was not rebutted by the plaintiff. From this evidence, therefore, the Board could reasonably conclude that the lots did not meet the requirements of § 8.02.100 of the zoning regulations, and, accordingly, that the Board was justified in denying the plaintiff's applications for zoning permits for those lots.
The plaintiff concedes that the evidence before the Board demonstrates that under certain circumstances access for fire and emergency apparatus may be "difficult, but not impossible," but claims that the "Board's interpretation of Regulation 8.02.100 to require trouble free access to the property seems to place upon the requirement of access a degree of stringency that is not fairly attributable to the plain language of the regulation." The natural and ordinary meaning of the words "unlimited access" necessarily mandates a more stringent standard than the "difficult" access standard that the plaintiff urges this court to adopt.
"Generally, it is the function of a zoning board . . . to decide . . . whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court [must] decide whether the board CT Page 5895 correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts." (Internal quotation marks omitted.) Spero v. Zoning Board of Appeals,217 Conn. 435, 440, 586 A.2d 590 (1991). "The regulation is a local legislative enactment, and in its interpretation we seek to discern the intent of the legislative body as manifested in the words of the regulation. . . . [H]owever, the regulation cannot be construed beyond the fair import of its language to include or exclude by implication that which is not clearly within its express terms. . . . The words employed by the local legislative body are to be interpreted in accordance with their natural and usual meaning. . . . Common sense must be used in construing the regulation. . . ." (Citations omitted.) Id., 441.
The word "unlimited" has been defined as "[h]aving no limits, bounds, or qualifications," and as "[w]ithout confines, unrestricted, boundless." The American Heritage Dictionary, New College Edition (1976); Black's Law Dictionary, Abridged Sixth Edition (1991). The natural and usual meaning of "unlimited access" connotes, at the very least, relatively free access from impediments and obstacles. Further, the evidence before the Board demonstrated that the emergency vehicles and lot owners face substantial impediments in accessing the property in question, including a dangerous corner, a steep grade and a narrow roadway, all of which are exacerbated by poor drainage leading to surface water and ice and inadequate winter maintenance. Finally, the fire chief's statements indicate that access was achieved using a small piece of equipment with difficulty and that larger equipment would experience increased difficulty, leading to his conclusion that in order "to provide proper fire protection to the present residents and to any future residents this section of road needs to be rebuilt." This evidence supports a conclusion that access by all public utilities and lot owners is by no means boundless or without restrictions or limitations. Therefore, the court concludes that the Board's interpretation of "unlimited access," as used in § 8.02.100 of the Town zoning regulations, was correct and that the Board applied this regulation with reasonable discretion to the facts before it. SeeSpero v. Zoning Board of Appeals, supra, 217 Conn. 440.
Accordingly, the Board's decision denying the plaintiff's applications for zoning permits on the ground that there is no unlimited access for all public utilities and lot owners as required by § 8.02.100 of the regulations is reasonably supported by the record. Since a decision of the Board "must be CT Page 5896 sustained if even one of the stated reasons is sufficient to support it," the plaintiff's appeal is dismissed. See Bloom v.Norwalk Zoning Board of Appeals, supra, 233 Conn. 208. The court need not address the other reasons stated by the Board or the corresponding claims raised by the plaintiff. Id.
Socrates H. Mihalakos