[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This zoning appeal raises an interesting question as to whether a hardship assertedly justifying a variance has been self-created. For the reasons set forth below, the hardship involved here cannot be so described.
The subject property, owned by the defendants Michael and Colleen Croft (the "Crofts"), is located at 146 Middle Beach Road in Madison. The lot is small and extremely irregular in shape. Its outline — long, narrow, and winding resembles that of a gerry — mandered congressional district. It is conceded that, without a setback variance, no dwelling unit could be built on it. The property formerly contained a garage with a summer apartment unit. The Crofts demolished the former structure in 1997, mistakenly thinking that they could reconstruct it without a variance. On discovering that they were wrong, they applied to the Madison Zoning Board of Appeals (the "ZBA") for a variance to construct a new residential building on the site. Because the proposed building was within a coastal boundary, see Conn. Gen. Stat. §§ 22a-94 (b) — 109(a), the Crofts also filed a coastal site plan. On August 4, 1998, the ZBA approved both requests by unanimous votes. The ZBA did not formally state reasons for either decision.
The plaintiff, Jessie O'Neill (O'Neill) owns property adjacent to the subject property. She commenced this appeal to the Superior Court by service of process on August 26, 1998. The appeal was heard on March 8, 1999. Aggrievement is found.
O'Neill presents two issues in her appeal. She first claims that the ZBA improperly found a hardship justifying a variance. CT Page 3139 She also claims that the ZBA provided an insufficient review of the coastal site plan. These contentions will be reviewed in turn.
"A variance constitutes permission to act in a manner that is otherwise prohibited under the zoning law of the town." Bloom v.Zoning Board of Appeals, 233 Conn. 198, 206, 658 A.2d 559 (1995). By statute, the ZBA is permitted to "vary the application of the zoning bylaws, ordinances or regulations . . . where . . . a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship. " Conn. Gen. Stat. § 8-6 (a)(3). "Proof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance." Bloom v. Zoning Board ofAppeals, supra, 233 Conn. at 207-08.
"If the board can reasonably conclude that a zoning regulation practically destroys or greatly decreases the value of a specific piece of property, it may vary the terms of the regulation." Culinary Institute of America, Inc. v. Board ofZoning Appeals, 143 Conn. 257, 262, 121 A.2d 637 (1956). The ZBA, as mentioned, did not provide reasons for its decision in this case. Under these circumstances, the court is required to "search the record as a whole to determine whether the evidence supports the board's decision to grant the variance." Bloom v. ZoningBoard of Appeals, supra, 233 Conn. at 209. The record here emphatically supports the conclusion that, absent a variance, no dwelling unit of any description could be built on the subject property. O'Neill conceded this point at argument. This is not a case like Jaser v. Zoning Board of Appeals, 43 Conn. App. 545,684 A.2d 735 (1996), where "a house, even though not the type. . . . desired, could have been built on the lot while conforming to the setback requirements." Id. at 545. Rather, a variance is essential if any such unit is to be built at all. The Crofts correctly point out that the variance they seek is a setback variance rather than a use variance. The subject property is already located in a residential zone. O'Neill claims that the property could be used as a parking lot, as apparently it was earlier in the century. A dwelling unit has, however, been located on the property for many years, and this is surely an appropriate use of the property in a residential zone. Because the property cannot be put to any residential use absent a variance, the record adequately supports the ZBA's finding of a hardship. CT Page 3140
The real question, which the parties candidly framed at argument, is not whether a hardship exists — but whether that hardship has been self-created. "[A] hardship — that was self-created . . . is insufficient to justify a variance." Bloom v. Zoning Board of Appeals, supra,233 Conn. at 208. O'Neill argues, with some force, that the hardship here was created by the Crofts. The Crofts had a dwelling unit on the subject property, as she points out, and they tore it down. The fact that they did so under a mistaken view of zoning law is, like ignorance of the law generally, no excuse. "Ignorantiajuris, quod quisque tenetur scire, neminem excusat [ignorance of the law, which every one is bound to know, excuses no man], is as well the maxim of our own law, as it was of the Roman." 4 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 27 (1769). The Crofts, like all other property owners, are "charged with knowledge of the law." Pallman v. Town of East Haven,135 Conn. 593, 594, 67 A.2d 560 (1949). In O'Neill's view, they have no one to blame for their predicament but themselves.
The Crofts counter this argument by pointing out that the real hardship requiring a variance is not the demolition of the old structure but the irregular shape of the lot. The demolition of the old structure has nothing to do with the question of whether the requested variance should be granted or denied. The merits of the Crofts' application would be exactly the same if the old structure were still in place. Under our law, the Crofts have the better argument.
It is true that by demolishing the old structure the Crofts have injured themselves to some degree. When the old structure was in place, the subject property had some useful function. With the old structure demolished and no new structure built, the property, for all practical purposes, has none. The Crofts have indeed injured themselves to this extent. This fact, however, is irrelevant to the claimed hardship. The problem is that, given the irregular shape of the property, the property could not be put to any conforming use absent a variance, with or without the former structure in place. This is a critical distinction under our law.
"In the typical self-created hardship case the landowner unilaterally engages in activity that violates the zoning ordinances and then on his own, or when charged with a zoning violation, seeks a variance." 7 PATRICK J. ROHAN, ZONING AND LAND USE CONTROLS § 43.02[6] at 43-66 (1998). Our reports are CT Page 3141 full of such cases. The facts of Highland Park, Inc. v. ZoningBoard of Appeals, 155 Conn. 40,229 A.2d 356 (1967), exemplify this pattern. A contractor builds a house. The discovery is then made, after the fact, that the house was built too close to the sideline of the lot. A variance cannot be granted because the hardship, the construction of the house in violation of the zoning laws, has been self-created. M. R. Enterprises, Inc. v.Zoning Board of Appeals, 155 Conn. 280, 231 A.2d 272 (1967), presents a somewhat different variation on this theme. A grocery store voluntarily commences operations in an area in which the sale of alcoholic beverages is prohibited. The hardship — the establishment of a business in a prohibited area — is again self-created. The rule of these cases does not sensibly apply to the Crofts. The voluntary act on their part, said to be self-creating, was not the building of a nonconforming structure but the demolition of such a structure. This action violated no zoning laws, and O'Neill does not claim otherwise. The true hardship here is the irregular shape of the lot. This is a hardship that the Crofts have not created. Under these circumstances, the decision of the ZBA to grant a variance must be sustained.
O'Neill additionally claims that the ZBA acted improperly in approving the coastal site plan. Her argument focuses on the requirements of Madison Zoning Reg. §§ 25.3.3 4.Those regulations require the applicant to "demonstrate that the adverse effects of the proposed activity . . . are acceptable," that "the proposed activity is consistent with the goals and policies" of the Coastal Management Act. They further require the ZBA to (1) "[c]onsider the characteristics of the site," (2) "[c]onsider the potential effects . . . of the proposed activity," and (3) [f]ollow all applicable goals and policies" of the Coastal Management Act. As mentioned, the ZBA did not state reasons for its decision. Under these circumstances, the court must search the record, and the decision of the ZBA must be upheld if it is reasonably supported by the record. DeBeradinisv. Zoning Commission, 228 Conn. 187, 198, 635 A.2d 1220 (1994); ROBERT A. FULLER, LAND USE LAW AND PRACTICE 590 (1993).
The Crofts correctly point out that, while the subject property is within a coastal boundary, the proposed structure is a relatively small building on a small lot built on the footprint of a preexisting building. The principal change from the prior structure is that the apartment on the proposed structure is to be elevated eight feet to comply with flood plain regulations. CT Page 3142 Under these circumstances, the effect of the proposed structure on coastal resources is likely to be modest. The record before the ZBA substantiates this conclusion. The Crofts' application states that a recent DEP inspection indicated that the lot does not infringe on the tidal wetlands. The principal adverse impact was expected to be silt run off during the process of construction. The Crofts proposed to mitigate this by the use of fencing and hay bails as silt barriers. On the positive side, the elevation of the apartment to comply with current flood elevation regulations would be a beneficial impact. These considerations were discussed before the ZBA during the hearing. Under these circumstances, the record adequately supports the ZBA's approval of the coastal site plan.
The appeal is dismissed.
JON C. BLUE JUDGE OF THE SUPERIOR COURT.