[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
The plaintiff, CSC Montoya Limited Partnership ("Montoya"), appeals the action of the defendant, the Branford Zoning Board of Appeals ("the Board"), granting a variance to the defendant, Sound Investors, L.L.C. ("Sound") allowing construction of a retaining wall, fourteen feet in height and 224 feet in length, on property owned by Sound and designated as 2 Commercial Parkway and 6 North Main Street in the Town of Branford.
Sound filed its application for variance on or about July 18, 2000. A public hearing on the application was held on August 15, 2000 and on that same date the Board voted to grant said variance. This appeal followed. The plaintiff also moved for a restraining order pending the outcome of its appeal to this court. A hearing on the motion was held on November 6, 2000 and the court denied said motion by memorandum filed November 29, 2000. A hearing on this appeal was held on April 23, 2001. The court found the plaintiff, an abutting land owner, aggrieved for purposes of prosecuting this appeal.
 II
The subject property is located in a "BL" (local business) district. It has a gross lot area of approximately 71,730 square feet, including some 6,630 square feet of ledge surface area. It contains two free-standing single story buildings, leased for commercial use. The easterly of the two buildings ("A") is currently leased to Starbucks and is operated as a coffee shop. The Branford Planning Zoning Commission ("the commission") granted a special exception allowing such use on September 2, 1999. CT Page 10928 (Return of Record 3). The westerly building ("B") has four rental units for commercial or business use. The property backs up against a 70-foot cliff. The plaintiff's property, utilized for rental apartments, sits atop the cliff. It appears much of the cliff face is part of Montoya's property and Montoya is concerned, among other things, about its potential exposure in the event of damage or injury stemming from rock falls.
On or about February 29, 2000, a rockslide occurred in the vicinity of the Starbucks building. Some 90 tons of rock slid from the cliff onto the subject property. Town authorities ordered the coffee shop closed until suitable remediation measures were taken to ensure public safety.
Sound developed a remediation plan which centered on the installation of an "energy absorbing" barrier wall near the rear of the property and in proximity to the cliff face. Sound sought a modification from the commission of the existing site plan and special exception to allow Sound to construct said wall. On July 20, 2000, the commission approved the application for modification, contingent on Sound obtaining the necessary variances from the defendant Board.
The wall, as designed, was to be 14 feet high and built in close proximity to the base of the cliff. This necessitated variances from the setback regulations and retaining wall height regulations.[1]
 III
Pursuant to General Statutes, § 8-6, the defendant board has the authority "to determine and vary the application of the zoning by-laws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such by-laws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured . . ."
The granting of a variance must be reserved for unusual or exceptional circumstances, Bloom v. Zoning Board of Appeals, 233 Conn. 198, 206-07
(citation omitted). "An applicant for a variance must show that, because of some peculiar characteristic of his property, the strict application of the zoning regulation produces an unusual hardship, as opposed to the general impact which the regulation has on other properties in the zone," Id., at 207.(citation omitted).
Accordingly, a zoning board of appeals is authorized to grant a CT Page 10929 variance only when two basic requirements are satisfied: (1) the variance must be shown not to affect substantially the comprehensive plan; and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. Proof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance. A mere economic hardship or a hardship that was self-created, however, is insufficient to justify a variance; and neither financial loss nor the potential for economic gain is the proper basis for granting a variance, Id., at 207-08 (citations, internal quotation marks omitted). "The hardship which justifies a board of zoning appeals in granting a variance must be one which originates in the zoning ordinance . . . and arises directly out of the application of the ordinance to circumstances or conditions beyond the control of the a involved", Whitaker v. Zoning Board of Appeals, 179 Conn. 650, 658
(citations omitted).
Where, as here, the zoning board of appeals fails to state upon the record the reason for its decision, the court must search the record to determine if there is some valid basis for the action taken, Grillo v.Zoning Board of Appeals, 206 Conn. 362, 369. The evidence to support the board's action must be substantial, Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 540. The "substantial evidence" standard requires enough evidence to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury, Kaufman v. Zoning Commission,232 Conn. 122, 151.
 IV
There was substantial evidence in the record to support the conclusion that the said variance did not affect substantially the comprehensive plan.
But the plaintiff, Montoya, claims that the Board acted illegally, arbitrarily and in abuse of the discretion vested in it in that Sound failed to establish legal hardship; that any hardship impacting Sound was self-created; and that the board erred in refusing to grant Montoya a continuance.
At the public hearing of August 15, 2000, Montoya sought a continuance for the purpose of obtaining expert testimony as to whether the hardship was self-created by virtue of rock clearance work performed by Sound's agent on the cliff face in the Fall of 1999; that is, whether such work caused or contributed to the rockslide of February 29, 2000. The Board denied such request for continuance. There was substantial evidence in CT Page 10930 the record that falling rocks posed a safety problem for the site both before said clearance work and before, and subsequent to, the rockslide of February 29, 2000 and that the danger to the public was not the February 29 rockslide but rather the likelihood of other rockslides in the future. Notice requirements were complied with. The court finds that the plaintiff was afforded adequate notice and opportunity to be heard, and that the Board did not act illegally, arbitrarily or in abuse of its discretion in refusing to grant Montoya's request for continuance.
 V
As to hardship, Sound, in its application, stated:" Without retaining wall, property is unusable, creating great financial hardship. Need for variances created by physical condition of subject property and abutting property."
Montoya claims that the wall could be built in accordance with the setback requirements of the regulations; that the sole purpose of the variance was to allow the wall to be built and still allow adequate space for a drive-through window at the rear of the coffee shop. The court is not persuaded. There was evidence in the record that the effectiveness of the retaining wall depended at least to some extent on its location in close proximity to the cliff face (Return of Record 13, p. 18, comments of Commissioner Brown; pp. 29-30, comments of Attorney Patterson). Further, the operation of the drive-through window was a permitted use and the provision of a two-lane driveway was apparently in conformity with the wishes of the commission (Return of Record 13, pp. 8-9, 22, 26).
Montoya further claims that, in placing a drive-through lane of a coffee shop directly adjacent to a "geologically weak" area, Sound created its hardship. The court is not persuaded. First, there was no evidence that, absent the drive-through lanes, the subject property would be safe for use. To the contrary, there was substantial evidence in the record to permit the Board to conclude that, absent remediation, the adjoining cliff face and its rocks posed a danger to the public were the permitted use be allowed to continue. "The self-created hardship rule provides that `[w]here the applicant . . . creates a nonconformity, the board lacks the power to grant a variance.'" Osborne v. Zoning Board ofAppeals, 41 Conn. App. 351; 354, quoting from Kulack v. Zoning Board ofAppeals, 184 Conn. 479, 482. Such is not the case here. There was no evidence that Sound, in building the buildings and engaging in a permitted use, violated any statute or regulation. Sound cannot be said to have created its own hardship by doing what it was entitled to do. There was substantial evidence in the record to allow the board to conclude that the hardship is not caused by the operation of the drive-through CT Page 10931 window but by the topography of the site, adjoining an unstable section of cliff. Such hardship exists, with or without the drive-through window.
Montoya claims that Sound claimed only economic hardship, which is not a sufficient reason for granting a variance; further that any financial loss incurred by Sound does not meet the Grillo test, Grillo v. ZoningBoard of Appeals, 206 Conn. 363. In Grillo, the court opined: "A zoning regulation that prevents land from being used for its greatest economic potential, however, does not create the exceptional kind of financial hardship that we have deemed to have a "confiscatory or arbitrary' effect," Grillo v. Zoning Board of Appeals, at 370. Finally, Montoya takes issue with Sound's claim that, absent the variance, the property would be useless for any reasonable purpose; Montoya points out that it is only the westerly, "Starbucks", section of the property Which has been affected by the rockfall; uses continue in the other building, so the property cannot be said to have been rendered useless.
Sound claims the hardship emanated from the unique geological features of the property, in that it adjoins a 70-foot cliff, now found to be unstable, which instability could lead to future rockslides onto the subject property. The court agrees. It is true that financial loss or hardship is not a sufficient reason for granting a variance, Forbes v.Zoning Board of Appeals, 146 Conn. 547, 550 (citation omitted). But, "[a] variance may be granted if the literal enforcement of the regulation causes exceptional difficulty or hardship because of some unusual characteristic of the property." Stillman v. Zoning Board of Appeals,25 Conn. App. 631, 636 (citations omitted). "A hardship resulting from the peculiar topography or condition of the land . . . may well be such a hardship as is contemplated by the ordinance." Fiorilla v. Zoning Boardof Appeals, 144 Conn. 273, 280. (citation omitted). The hardship here is not merely economic but stems from the topography of the site, adjoining an unstable section of cliff.
The Grillo test is not dispositive of this matter; "This test is used in the extreme situation where the application of a regulation renders property practically useless and that loss of value alone amounts to a hardship." Stillman v. Zoning Board of Appeals, supra, at 636 (citation omitted). "Although satisfying this test is a valid means of establishing a hardship, it is not exclusive", Id.
While financial hardship is not itself sufficient reason for granting a variance, once legal hardship is established the board is not barred from consideration of the financial impact on the applicant of the board's action. The plaintiff suggests Sound "misled" the board by asserting that, absent the variance, the subject property would be rendered useless CT Page 10932 . . . The short answer is that Sound, having established legal hardship stemming from the site's topography, need not show that the property was rendered useless, absent the variance. Moreover, the court is not persuaded the board was misled. The existence of the westerly building ("B") is clear from the record (Return of Record, 14 — Building "B" depicted on site plan; Return of Record 1, — "Location 2 Commercial Parkway and North Main Street. Present use of property: Retail Stores and Starbuck's Coffee"). There is nothing in the record to suggest that the board was unaware of building "B" and its use. Sound's claim was that that section of the property occupied by the "Starbucks" operation would be rendered useless, absent the variance sought. There was substantial evidence in the record to permit the board to conclude that denial of the variance sought would deprive the owner of the reasonable use of the "Starbuck's" portion of the subject property and greatly decrease the value of the subject property. Further, it should be remembered that, in seeking the variance, Sound was not seeking to initiate, extend or intensify a use, but merely to resume a permitted use, interrupted by the rockslide and its consequences.
 VI
The plaintiff has failed to establish, by a fair preponderance of the evidence, that the defendant board, in granting the variance at issue, acted illegally, arbitrarily or in abuse of its discretion. The court finds there is substantial evidence in the record to support the board's action in granting the defendant Sound's application for variance.
Accordingly, the plaintiff's appeal is dismissed and judgment may enter in favor of the defendants Sound Investors, LLC and the Zoning Board of Appeals of the Town of Branford as against the plaintiff, CSC Montoya Limited Partnership.
By the Court
John T. Downey Judge Trial Referee