[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this administrative appeal, the plaintiff, John R. Bozzi, Jr., challenges the defendant's,[1] the Zoning Board of Appeals of the Town of East Hampton, decision to grant variances to co-defendants, Gerald and Nancy Hasselman. These variances, from the applicable setback and lot-coverage zoning regulations, allow the Hasselmans to build a covered deck,[2] stairs and a ramp on their nonconforming property.
The plaintiff complained that the deck obstructs his view of Lake Pocotopaug and claims that the board's decision violates General Statutes § 8-6 and the Town of East Hampton Zoning Regulations (hereinafter regulations), §§ 32.3 and 16.8. CT Page 8859
 Factual and Procedural Background
The Hasselmans began constructing the deck before obtaining the appropriate building permit and, on February 18, 1998, the town's zoning enforcement officer issued a cease and desist order. (Return of Record [ROR], Item #1: Cease and Desist Order.)
On March 4, 1998, the Hasselmans applied to the East Hampton Zoning Board for the following variances from § 6.1 of the regulations: (1) side-yard setback from 15 feet to 5 feet; (2) front-yard setback from 25 feet to 21 feet; and (3) lot coverage from 20% to 35% of the property so that Mrs. Hasselman's mother and the Hasselmans' son, both of whom are confined to wheelchairs,[3] can more easily gain access to the house. (ROR, Items #2: Application Map and #12: Zoning Regulations.)
The board published legal notices of the application and hearing on April 3 and April 10, 1998, in The Rivereast NewsBulletin. (ROR, Item #13: Publication of Notice). At the April 13, 1998, public hearing Mr. Hasselman requested a continuance, which the board granted. (ROR, Items #4: 4-13-98 ZBA Minutes and #14: Publication of ZBA Actions).
Subsequently, on May 1 and May 8, 1998, the board published in The Rivereast News Bulletin legal notice of the Hasselmans' application and the next scheduled hearing date. (ROR, Item #15: Publication of Notice).
On May 11, 1998, the board conducted a public hearing. The plaintiff and, on his behalf, his attorney, Kenneth Antin, spoke against the Hasselmans' application. (ROR, Item #11: Partial Transcript of 4-13-98 and 5-11-98 ZBA Hearings, p. 15-20; 22-23; 28-30.) The board read into the record a letter it received from the Hasselmans' neighbors, Joanne and Stanley Salva, stating that the Salvas had "no objection" to the requested variances. (ROR, Items #3: Letter and #11, p. 30.) Mr. Hasselman and, on his behalf, his attorney, William Grady, spoke in favor of the application for the variances. (ROR, Items #5: 5-11-98 ZBA Minutes and #11, 4-14; 20-22; 24-25.)
The board, by unanimous vote, granted the variances; basing its approval upon finding[4] that the proposed variances did not substantially affect the town's comprehensive zoning plan; failure to issue the requested variances would deprive the Hasselmans of a reasonable use of their property; that Hasselmans CT Page 8860 had not created the "hardship," i.e., the necessity for the variances; that there existed no feasible alternative for the placement of a deck; and, further, that the plaintiff did not enjoy a legal right to a view of the lake. (ROR Items #5 and #11, p. 31.)
The board published notice of its actions in The RivereastNews Bulletin on May 15, 1998. (ROR, Item #16: Publication of ZBA Actions.) The board notified the Hasselmans by letter dated May 12, 1998. (ROR, Item #7: ZBA Letter.)
This appeal ensued. On May 21, 1998 the plaintiff commenced this appeal and properly served the respective defendants, including the town clerk and chair of the zoning board of appeals. (Plaintiff's Complaint.) The plaintiff also sought a restraining order, which the court (Mullarkey, J.) denied on June 15, 1998.
The defendants, the town and zoning board of appeals, jointly filed an answer and return of record on August 10, 1998. (Defendants' Answer.) The plaintiff, on September 14, 1998, filed a brief in support of his appeal. (Plaintiff's Brief.) The town and zoning board then jointly filed a brief on October 13, 1998, and also a supplemental return of record. (Defendants' Brief.) The Hasselmans, proceeding pro se, filed papers and photographs with the court on November 30, 1998. (Defendants' Papers.)
The plaintiff had previously filed a motion for default judgment against the Hasselmans for a failure to plead. On September 18, 1998, the court (Knight, TAC) granted that motion:
On March 5, 1999, the court conducted a hearing on this administrative appeal. At that hearing the plaintiff objected to the court's consideration of the papers submitted by the Hasselmans. The plaintiff filed a written objection and memorandum of law on March 19, 1999, which the court (Robaina, J.) sustained on April 7, 1999. The court concluded that the paperwork and photographs submitted by the Hasselmans did not constitute an answer under the rules of practice and, therefore, were insufficient to set aside the default judgment. Consequently, the court would not consider the papers or photographs as evidence in this appeal.
The court has not considered the paperwork or photographs submitted by the Hasselmans in reaching its decision with respect CT Page 8861 to the plaintiff's administrative appeal against the Town of East Hampton and Zoning Board of Appeals.
General Statutes § 8-8 governs zoning appeals and mandates that parties strictly comply with the relevant statutory provisions. Simko v. Zoning Board of Appeals, 206 Conn. 374, 377,538 A.2d 202 (1988).
 Aggrievement
Pursuant to General Statutes § 8-8 (b), "any person aggrieved by any decision of a board may take an appeal to the superior court." For purposes of § 8-8 (b), an aggrieved party "includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." General Statutes § 8-8 (a)(1).
The defendants, Gerald and Nancy Hasselman, own a multi-family home located at 1-3 Park Road, East Hampton.
The plaintiff, John Bozzi, owns property at 2 Poe Drive, East Hampton.
The plaintiff has alleged aggrievement. (Plaintiff's Complaint, ¶ 3.) In addition, on March 5, 1999, during the hearing conducted by the court, the plaintiff testified that his property lies behind and abuts the property owned by the Hasselmans.
The plaintiff has established aggrievement.
 Timeliness and Service of Process
An administrative appeal must be "commenced by service of process within fifteen days from the date the notice of the decision was published." General Statutes § 8-8 (b).
The board published notice of its decision in The RivereastNews Bulletin on May 15, 1998. (ROR, Item #16.) On May 21, 1998, Pauline Markham, Town clerk for the Town of East Hampton, Ellen Richards, Clerk for the Town of East Hampton, Charles Nichols, Chair of the Zoning Board of Appeals, and Gerald and Nancy Hasselman were each individually served with the plaintiff's complaint. CT Page 8862
The plaintiff has timely served the proper parties.
Accordingly, the court has jurisdiction to hear and decide this appeal.
 Standard of Review
General Statutes § 8-6 sets forth the function of a zoning board of appeals. Section § 8-6 (a)(3) states that boards have the power and duty "to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured, provided that the zoning regulations may specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed."
General Statutes § 8-8 "grants broad powers to the zoning board of appeals and limits those powers only when the Zoning Commission passes a regulation explicitly limiting the issuances of variances." Stillman v. Zoning Board of Appeals,25 Conn. App. 631, 634-35, 596 A.2d 1, (1991), cert. denied,220 Conn. 923 (1991).
Section 32.3[5] of the regulations details the standard used by the East Hampton Zoning Board of Appeals in issuing variances from its regulations. (ROR, Item #12, p. 102-103.) Section 32.3 authorizes the board to grant variances from "any provision of these Regulations." The regulations place only one restriction[6] on the board's discretion in granting variances; and that express prohibition does not implicate either § 6.1 or § 16.8, the provisions at issue in this appeal. (ROR, Item, #12.)
The court in Bloom v. Zoning Board of Appeals, 233 Conn. 198,205-10, 658 A.2d 559 (1995), sets forth the well-established standard of review used by courts when ruling on an appeal from a board's decision to grant a variance. The board enjoys wide discretion and may only be overruled by a showing that the board CT Page 8863 acted unreasonably, arbitrarily or illegally. Irwin v. Planning Zoning Commission, 244 Conn. 619, 628, 711 A.2d 675 (1998). "The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Internal quotation marks omitted.) Bloomv. Zoning Board of Appeals, supra, 233 Conn. 198, 206.
"In an appeal from the decision of a zoning board, we therefore review the record to determine whether there is factual support for the board's decision[.]" (Internal quotation marks omitted.) Francini v. Zoning Board of Appeals, 228 Conn. 785,791, 639 A.2d 519 (1994). See also Bloom v. Zoning Board ofAppeals, supra, 233 Conn. 198, 208 (court may search the record to find a basis for the action taken by the board).
While the court determines from a review of the record whether substantial evidence exists to support the board's findings ("[E]vidence is sufficient to sustain an agency['s] finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred." [Internal quotation marks omitted.] Huck v. Inland Wetlands Watercourses Agency,203 Conn. 525, 541, 525 A.2d 940 [1987]; it is within the province of the board to determine the credibility of witnesses and the factual issues. Id., 540-41.
"`Courts must not substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing.'" Raczkowski v. ZoningCommission, 53 Conn. App. 636, 640, ___ A.2d ___ (1999), quotingBloom v. Zoning Board of Appeals, supra, 233 Conn. 198, 206.
 Discussion
The plaintiff contends that the board violated General Statutes § 8-6 by misapplying the regulations, § 32.3 with respect to § 16.8; and, in doing so, substantially affected the comprehensive zoning plan. The plaintiff further argues that the board improperly determined what type of "hardship" authorizes the grant of a variance. The defendants disagree.
Variances allow property owners to escape the strict application of the relevant zoning regulations. Bloom v. ZoningBoard of Appeals, supra, 233 Conn. 198, 206. Zoning boards of appeals may grant a variance under General Statutes 8-6 (3) provided that their decision conforms to the following CT Page 8864 conditions: "`(1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan.'" Id., 207, quoting Grillo v. ZoningBoard of Appeals, 206 Conn. 362, 368, 537 A.2d 1030 (1988).
"To support the granting of a variance, a hardship must arise from a condition different in kind from that generally affecting properties in the same zoning district and must be imposed by conditions outside the property owner's control." Stillman v.Zoning Board of Appeals, supra, 25 Conn. App. 631, 636, citingWhittaker v. Zoning Board of Appeals, 179 Conn. 650, 658,427 A.2d 1346 (1980); Garibaldi v. Zoning Board of Appeals,163 Conn. 235, 238, 303 A.2d 743 (1972).
Comprehensive Zoning Plan
The plaintiff argues that the board, in granting the requested variances from § 6.1 (yard set-back and lot coverage allowances), violated its responsibility to ensure that variances do not substantially affect the comprehensive zoning plan, and specifically contends that the board failed to take proper cognizance of § 16.8 (additions to buildings on nonconforming lots). Alternatively, the plaintiff claims that the board granted a de facto variance to § 16.8 and, therefore, acted illegally.
The defendants, in their brief, address the first but not the plaintiff's second point. The defendants maintain that the record sufficiently supports the decision of the board and the conclusion that the board properly applied § 32.3 consistent with the overall zoning scheme for the town.
The court determines a town's comprehensive zoning plan from a review of its zoning regulations. Adolphson v. Zoning Board ofAppeals, 205 Conn. 703, 713, 535 A.2d 799 (1988).
The board's familiarity with the district and the regulations may be inferred from the record.[7] (ROR, Item #11, p. 14; 27.) The court also finds support in the record for the board's conclusion that approving the variances for the construction of a deck by the Hasselmans conforms with the property use of surrounding homes and does not alter the character of the neighborhood.[8] (ROR, Item #11, p. 7; 10; 31.) CT Page 8865
The overall regulation or zoning scheme for the town permits variances to the setback and lot-coverage requirements when an application of the zoning regulations would create an unusual hardship or difficulty which would deprive the owners of the reasonable use of their property or buildings. (ROR, Item #12, p. 102.)
Given the liberal discretion accorded the board, the court finds that a review of the record supports the conclusion that granting the requested variances from § 6.1 does not adversely affect the comprehensive zoning plan. (ROR, Item #11.)
The plaintiff has not disputed this general point but, instead, based on his interpretation of § 16.8, claims that a variance from § 6.1, when a property is legally nonconforming, creates a de facto variance from § 16.8 and therefore, substantially affects the comprehensive zoning plan. The plaintiff had previously, through counsel, raised this concern at the public hearing. (ROR, Item #11, p. 17.) And, the board, through its actions, clearly rejected this argument. (ROR, Item #11, p. 30.) Further, the plaintiff contends that by not requiring an application for a variance from § 16.8 the board, in effect, granted a de facto variance and acted illegally.
The difficulty with the plaintiff's contention and his reliance on § 16.8 as the linchpin of his argument is, very simply, that the Hasselmans' did not need to apply for a variance from § 16.8. Nothing in the regulations indicates that they were required to do so. (ROR, Item #12.)
Section 16.8 of the regulations governs nonconforming lots. In its entirety, § 16.8 states: "Buildings containing a permitted use, but which does [sic] not conform to the requirements of the Regulations regarding height, floor area, percentage of lot coverage, set backs or parking facilities, may be enlarged or altered provided: 1. Such enlargement contains no more dwelling units than now exist. 2. Additions are constructed within the applicable yard requirements, or with the approval of the Zoning Board of Appeals, are not closer to the lot lines than the existing building or structure."[9] Regulations; ROR, Item #12, p. 53.
As a threshold matter,[10] in order for the plaintiff to prevail, the regulations must support the contention that accessory uses, like decks or porches, constitute CT Page 8866 "additions"[11] to an existing building.
"Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply." (Brackets in original; internal quotation marks omitted.) Irwin v. Planning ZoningCommission, supra, 244 Conn. 619, 627. Upon appeal, a trial court decides whether the board correctly interpreted the provision and properly applied the regulation in light of the facts. Id., 627-28. The interpretation of zoning regulations is a question of law for the court. Northeast Parking, Inc. v. Planning ZoningCommission, 47 Conn. App. 284, 293, 703 A.2d 797 (1997) See also Regulations, § 31.1.
"Regulations have the force and effect of statutes and are construed in accordance with accepted rules of statutory construction." Caron v. Inland Wetlands WatercoursesCommission, 25 Conn. App. 61, 65-66, 592 A.2d 964 (1991) aff'd.,222 Conn. 269, 610 A.2d 584 (1992).
"As with any issue of statutory interpretation, our initial guide is the language of the statute itself. . . . Furthermore, we interpret statutory language in light of the purpose and policy behind the enactment. . . . In construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended." (Citations omitted; internal quotation marks omitted.) Willow Springs CondominiumAssn., Inc., v. Seventh BRT Development Corp., 245 Conn. 1, 26,717 A.2d 77 (1998).
First, the plain language of § 16.8 militates against the plaintiff's position. Although the regulations fail to define "additions"; § 3 — Definitions (ROR, Item #12, p. 2-6); Webster's Seventh New Collegiate Dictionary defines addition as "the result of adding: increase." Within the context of § 16.8 that means an increase in the square footage of the building. The regulations specifically exempt porches from the square footage of a building. "Floor area, Gross The total horizontal floor area, expressed in square feet, of a building as measured from the exterior walls. This measurement shall not include porches, external walkways or areas completely below finished grade, use for storage accessory and incidental to the primary floor areas." Section 3 (definitions), ROR, Item #12, p. 4. Consequently, a CT Page 8867 deck which does not increase the size of an existing building, cannot be understood as an addition to that building.
Section 3 (definitions) of the regulations state that when the regulations have not defined a word, it should be given its common, ordinary meaning. Regulations, ROR, Item #12, p. 2. Common usage dictates that a deck or porch does not increase the use of a building but rather creates a use incidental and subordinate to the building. Throughout the hearing, speakers referred to the deck as a accessory use or accessory structure, not as an addition to the existing house. (ROR, Item #11, p. 7-8, 11, 20.) The concept that a deck is an accessory structure and not an addition to a building or an additional building also finds support in the regulations. (ROR, Item #12, p. 2.)
The regulations define "Building: [as] A structure intended for the enclosure, shelter, or housing of persons animals or materials. Any structure greater than eight feet in height, with the exception of flagpoles, signs and public utility poles, shall be considered as buildings relative to setbacks and yard requirements." (Emphasis added.) Id. The board specifically inquired about the height of the deck. (ROR, Item #11, p. 25). The deck, while covered, is not enclosed and did not exceed eight feet in height. There exists sufficient evidence on the record to conclude that a deck/porch does not constitute a building for purposes of the regulations. (ROR, Items #11 and #12).
Secondly, the board's awareness of § 16.8 (plaintiff's counsel alerted the board to its potential applicability [ROR, Item #11, p. 17]) and their decision to grant the variances without requiring that the Hasselmans submit an application for a variance from § 16.8 provides indicia that § 16.8 does not apply, under these circumstances. The board's decision, a product of their experience with the regulation, has some bearing on the interpretation of the court and the court may look to the behavior of the board for guidance in determining whether a porch may be considered an "addition" for purposes of § 16.8.
"The practical Construction placed over the years upon ambiguous language . . . by those charged with its administration becomes weighty evidence of what the law is." Clark v. TownCouncil, 145 Conn. 476, 485, 144 A.2d 327 (1958). While the board's prior practice does not bind this court's ruling, it is, nevertheless, entitled to some deference. See Coppola v. ZoningBoard of Appeals, 23 Conn. App. 636, 640, 583 A.2d 650 (1990). CT Page 8868
The court may reasonably infer from the board's prior conduct that the board perceives decks to be incidental to existing buildings and not "additions" subject to § 16.8. (ROR, Item #11, p. 27.) And, although the defendants, like the plaintiff, failed to brief whether or not a deck constitutes an "addition" to an existing building, the board's experience in interpreting its regulations and their actions coupled with a plain reading of the regulations indicate that § 16.8 is inapplicable with respect to accessory structures. (ROR, Items #11 and #12, p. 2-6; 53.) The court concludes that for the purposes of § 16.8, porches and decks do not constitute "additions" to existing buildings.
This interpretation of § 16.8 conforms with the rules of statutory construction, the common law[12], and the intent of General Statutes § 8-6.
In sum, § 16.8 has no bearing on the Hasselmans' application and, in light of the board's familiarity with the regulations, the neighborhood and the needs of the community, the plaintiff's argument that by granting a variance to the applicable setback and lot coverage regulations, the board has "substantially affected" the comprehensive zoning plan for the town because it failed to properly apply the provisions of § 16.8 proves particularly unpersuasive. (ROR, Item #11, p. 27-28; 30-31.)
Accordingly, the plaintiff's reliance on § 16.8 cannot provide a basis for sustaining his appeal.
Hardship
With respect to § 6.1 of the regulations, the plaintiff asserts that the "hardship" complained of cannot be personal to the Hasselmans but, rather, must be unique to the property. The plaintiff maintains that the board based its decision, in violation of General Statutes § 8-6 and § 32.3 of the regulations, on sympathetic concerns for the personal hardships suffered by handicapped members of the Hasselman family.
The board argues that there existed sufficient facts from which they properly concluded that the configuration of the Hasselmans' property and the location of existing structures created the resulting hardship.
A hardship cannot be personal; but rather runs with the CT Page 8869 property, i.e., the particular characteristics or unique conditions of a property create or cause a hardship relative to the imposition of zoning regulations. Reid v. Zoning Board ofAppeals, 235 Conn. 850, 857, 670 A.2d 1271 (1996). For example, the configuration of the lot and placement of existing structures or impediments may create an unusual hardship unique to the property. Stillman v. Zoning Board of Appeals, supra,25 Conn. App. 631, 636-37 ("unique conditions" — size of lot and placement of a well and septic system — made regulations "exceptionally burdensome").
A review of the record establishes that the board could reasonably have found the following facts: the Hasselmans owned a pre-existing, nonconforming 6,400-square-foot lot in an area requiring 20,000-square-foot lots (ROR, Items #2 and #12, p. 9); their cottage, now a two-family home, was built prior to the adoption of the zoning regulations (ROR, Item #11, p. 9); the location of the house, garage and shed constrain the placement of additional structures (ROR, Item #2); the narrow front doorway made access by wheelchair difficult if not impossible (ROR, Items #11, p. 8 and #18: Building Plans); the existing rear porch and back door/hallway could not be readily accessed by individuals using wheelchairs because the shape of the interior hallway makes turning a wheelchair difficult if not impossible (ROR, Items #11, p. 8 and #18); and, finally, that a wider deck would be necessary to accommodate the existing fireplace juts. (ROR, Items #2, #11, p. 6; 8-9, #17: Application Sketch, #18).
Section 32.3 of the regulations allows the board to grant variances for "exceptionally irregular, narrow, shallow or steep lots, or other exceptional physical conditions, whereby such strict application would result in practical difficulty or unnecessary hardship that would deprive the owner of thereasonable use of the land or building involved." (Emphasis added.) East Hampton's zoning regulations specifically contemplate that the strict imposition of the regulations may create an unnecessary hardship that would deprive a property owner of the reasonable use of existing buildings.
The application, and accompanying map, reveal that the Hasselmans own an small or "tight" lot. (ROR, Items #2 and #11, p. 28.) Existing structures on their lot include a house, garage, shed, and back porch. (ROR, Item #2.) The record sufficiently supports the board's conclusion that strict application of the town's zoning regulations, in light of the unique characteristics CT Page 8870 of the property — i.e., the size of the nonconforming lot coupled with the placement and shape of the existing structures along with the unique architectural features of the house, i.e., narrow doorways and existing fireplace juts — would deprive the Hasselmans of the reasonable use of their property and, therefore, cause an unusual or unnecessary hardship. (ROR, Items #2, #11, #12, #17, #18.) The board further concluded that the Hasselmans' did not create the situation which gave rise to the hardship (ROR, Item #11, p. 31.)
Notwithstanding the need for safe access to and from the house by members of the family confined to wheelchairs, clearly a reasonable and necessary use of the house; the board also explicitly addressed "reasonable use" with respect to the construction of a deck, independent of the family's personal needs. The board concluded that with respect to lake-front property, a deck constitutes a reasonable use of the property (ROR, Item #11, p. 31) and that inherent limitations of a property (ROR, Item #12, p. 102) may necessitate a variance from the zoning regulations, so that a property owner may take advantage of this use.
The board stated that nearly all of the homes in the neighborhood, including the plaintiff's, had decks built with the benefit of variances issued by the board; variances that allowed them to use their properties in the same way as requested by the Hasselmans. (ROR, Item #11, p. 28.)
The record also supports the board's finding that given the existing structures, architectural features of the house and the size of the Hasselmans' lot they had no "feasible alternative" as to the placement of the deck. (ROR, Item #11, p. 31.)[13] The application and attached map, show that the placement of the house and garage severely restrict where a deck may be build. (ROR, Item #2.) The record also indicates that the inherent features of the existing house[14], further limited access to the home, and, additionally, necessitated a wider deck. (ROR, Items #2, #11, #17, and #18.)
The court finds that the facts reasonably support a finding that a deck constitutes a reasonable use of the property, the location of permanent structures on an undersized lot preclude constructing a deck in any location other than within the setback areas, and, further, that the size of the lot and the architectural features of the existing house, in turn, CT Page 8871 necessitated variances from the setback and lot-coverage regulations.
Accordingly, the court will not disturb the board's decision to grant the variances given the sufficiency of the record establishing "exceptional physical conditions," unique to the property, that create, if the regulations were strictly imposed, a "practical difficulty or unnecessary hardship" for the Hasselmans and prevent them from enjoying a reasonable use of their property.
 Conclusion
Mindful of the broad discretion granted to zoning boards of appeals, the court finds that the plaintiff has not sustained his burden. The record sufficiently supports the board's decision to issue the requested variances.
The record also supports the conclusion that the board acted reasonably, fairly, and legally in the arriving at its decision and that their decision did not substantially affect the comprehensive zoning plan for the town.
Accordingly, the decision of the defendant zoning board of appeals is affirmed and the appeal of the plaintiff is dismissed.
It is so ordered.
By the court.
Robaina, J.